**STATE OF RHODE ISLAND and PROVIDENCE PLANTATIONS**

**DEPARTMENT OF EDUCATION**

**SPECIAL EDUCATION DUE PROCESS HEARING**

**STUDENT: JOHN DOE**

**SCHOOL DISTRICT: TOWN OF CUMBERLAND**

**HEARING OFFICER: ARTHUR G. CAPALDI, ESQ.**
**1035 MAIN STREET**
**COVENTRY, R.I. 02816**

**ATTORNEY FOR SCHOOL DEPT: JOSEPH ROTELLA, ESQ.**
**2602 MENDON ROAD**
**CUMBERLAND, R.I. 02864**

**STUDENT'S ATTORNEY: JOHN R. MAHONEY, ESQ.**
**155 SOUTH MAIN STREET**
**SECOND FLOOR**
**PROVIDENCE, R. I. 02903**

**STATE OF RHODE ISLAND and PROVIDENCE PLANTATIONS**

**DEPARTMENT OF EDUCATION**

**SEPCIAL EDUCATION DUE PROCESS HEARING**

**STUDENT: C. SCHREIBER**

**SCHOOL DISTRICT: TOWN OF CUMBERLAND**

**HEARING OFFICER: ARTHUR G. CAPALDI, ESQ.**
**1035 MAIN STREET**
**COVENTRY, R.I. 02816**

**ATTORNEY FOR SCHOOL DEPT: JOSEPH ROTELLA, ESQ.**
**2602 MENDON ROAD**
**CUMBERLAND, R. I. 02864**

**STUDENT'S ATTORNEY: JOHN R. MAHONEY, ESQ.**
**155 SOUTH MAIN STREET**
**2ND FLOOR**
**PROVIDENCE, R. I. 02903**

# LEXICON

For the purposes of the decision in the within hearing and to ensure confidentiality of the student, the following Lexicon shall be used in this decision:

**STUDENT:** **C. SCHREIBER**

**PARENTS:** **MR. AND MRS. ERIC SCHREIBER**

**SCHOOL DISTRICT:** **CUMBERLAND SCHOOL DEPARTMENT**

**HEARING OFFICER:** **ARTHUR G. CAPALDI, ESQ.**

**ATTORNEY FOR SCHOOL DEPT.:** **JOSEPH ROTELLA, ESQ.**

**STUDENT'S ATTORNEY:** **JOHN R. MAHONEY, ESQ.**

## POSITION OF PARTIES

**PARENT**: The School District wrongfully terminated tutoring resource. The Student is in need of Tutoring Services as a related service under the proposed IEP.

**SCHOOL DISTRICT**: The Student received high grades and is no longer in need of Tutoring resource.

## ISSUES AND SUMMARY OF DECISION

**ISSUE:** Should the IEP for the year September, 2006 to May, 2007 include tutoring a resource?

**DECISION:** Tutoring shall remain a related serviced and resource for the Student.

## TRAVEL OF THE CASE

That on October 11, 2006, this Hearing Officer was appointed to conduct a due process hearing by the Department of Education, State of Rhode Island. A notice of appointment letter went out to the parties on October 11, 2006 setting forth the proposed hearing dates.

A pre hearing conference was held on November 11, 2006 and hearings were held on November 9, 2006 and November 16, 2006.

The hearing was concluded on November 9, 2006.

## FACTS

The Student is seventeen years old and in the eleventh grade in the Cumberland High School.

In 1995 while in kindergarten the Student had a speech and language evaluation but it was not recommended that she received speech and language services but that her progress be periodically monitored (Plaintiff's Exh. A1) On June 5, 2005, the Team recommended audiological evaluation and to reassess language skills in a year. (Plaintiff's Exh. A-2) The Team listed her at that time as <u>non-handicapped</u>. (Plaintiff's Exh. A-2) The Student repeated the third grade at the mother's request. In January, 1998, after a speech and language re-evaluation she was referred to the multidisciplinary team for determination of further services. During January, February, March and April of 1998 the Student had the following evaluations: Speech and Language, WISC-111 Test, Educational Assessment and Clinical Psychological Evaluation.

On June 1, 1998 the Team classified the Student as learning disabled. She was given resource services for reading and language. (Plaintiff's A-9)

In March of 2001, the Student had an educational evaluation which concluded:

> "(The Student) had difficulty with all areas of written language (grammar, spelling, sentence structure" (Plaintiff's A-12)

In May of 2001, the Team continued her designation as learning disabled and that resource services for reading, writing and spelling to continue. (Plaintiff's (A-14)

The Learning Disabilities documentation form (Plaintiff's 15) stated that according to recent tests there was a severe discrepancy between (The Student's) IQ and her achievement scores in the area of reading, writing and spelling. (Plaintiff's A-15)

In February, 2004, the Student had another educational evaluation. It concluded:

> "(The Student's) English oral language skills are average when compared to others at her age level. Her overall level of achievement is low average. Her academic skills are low average. (The Student's) fluency and academic tasks and her ability to apply academic skills are both within the average range." (Plaintiff's Exh. A-16)

The Student's IEP for the year April, 2004 to April, 2005 (Defendant's Exh. 1) states that the Student needed to continue developing her editing skills to correct, grammar, spelling errors, capitalization, punctuation and to vary sentence type. The Service Providers were in regular education and resource room. She was given several modifications to support her.

The Student was given home tutoring two hours a week for the entire year to help her in academic subjects.

The Team evaluation of May 12, 2004 continued her designation as "learning disabled." The team recommended tutoring through the summer to prevent regression and she would continue tutoring during school to help her with her class work. They made specific mention that Tutoring year round world help her greatly. (Plaintiff's Exh. 27)

The IEP for the year June, 2005 to June, 2006, acknowledged that the Student made a great adjustment to High School. She completed the Third Quarter of grade nine with a 4.02 cumulative average (A to A+). She continued to have resource. She continued to have several modifications in placed and tutoring remained in place at home for two hours once a week. It is to be noted that the Student made significant progress in reading and writing through April, 2006.

The IEP for June, 2006 to June, 2007 continued with resource. Again, she completed the third quarter of the tenth grade with a 4.008 (A to A+) cumulative average. (Plaintiff's A-19) However, the special education services no-longer had tutoring as a resource but had a special education teacher available for the IEP objectives in the resource room for .7 hours for 2/3 of the week. (Plaintiff's Exh. 19)

The January, April and June, 2005-2006 progress reports show continued progress. (Defendant's Exh. 4)

Jane McJennett, an educational therapist, testified. She has the equivalent of a Master's Degree from Massachusetts General Hospital in a specific reading disability, dyslexia. (Trans. 11-9-06 P.30) She has serviced people with dyslexia over fifteen years servicing about twenty a year. She is an employee of Rhode Island Tutorial. (Trans. 11-9-06 P.32)

The Student's learning disability is dyslexia.

In the 8th grade the Student was having difficulty decoding words and in writing. (Trans. 11-9-06 P.46)

The Student presently is still having problems with spelling, recognizing words, with spoken or written language, reading fluency, grammatical usage, reading comprehension. (Trans. 11-9-06 P.48, 49, 50, 51 & 52)

The Student cannot read on par with the average 11th grader. (Trans. 11-9-j06 P.53) According to Ms. McJannett the Student is getting A's because of the kinds of Testing, because the Student is so attentive and because she discusses the material at home. (Trans 11-9-06 P.63)

As to whether this Student needs Tutoring in her present IEP she said:

> "My sense is absolutely, my feeling here of resources and small group probably does not benefit her educationally. It is not specific enough requirement for her learning disability. I think again, she needs direct, multisensory, a highly structured approach so that you would start with subject and verbs, and work all the way through to complete embedded clauses ."

I find from this witnesses testimony that the present resource provided in the last IEP offered does not accommodate her disability. As to the Student's use of books on tape, it would be difficult for the Student to use. (Trans. 11-9-06 P. 69)

In reviewing the Student's IEP for Sept. 2006 to Sept. 2007 and its goals this witness pointed out several goals that would be extraordinarily difficult to attain without tutoring.

Leslie DeCesare was the Student's English teacher under the June, 2005 and June, 2006 IEP. She had very little familiarity of the Student's disability. (Trans. 11-16-06 P.92) She did not know about the Student's tutoring resource. (Trans. 11-16-06 P. 104)

The Student received an A in her class. The witness testified that she does not correct grammatical errors in a test. In reviewing Plaintiff's Exhibit A 17, she stated that although her

spelling and grammar was incorrect, the Student's thoughts about the topic was correct. She admitted that the Student's spelling and grammar was atrocious. (Trans 11-16-06 P. 109) On tests this witness testified that she does not correct spelling or grammar on a test. (Trans. 11-16-06 P. 117) As to misspelling and grammatical errors she said everyone writes that way. (Trans. 11-16-06 P. 118)

Betsy MacDonald taught the Student Chemistry and the Student did well in her class. Her testimony paralleled the English Teacher. When asked about the Student's spelling she said "....so many write poorly, too, that it certainly doesn't stand out to me."

Cheryl Gesualdi, was the Student's math teacher/ as in the English and Chemistry, Geometry was an "enriched" geometry. There wasn't a lot of writing.

The Student did well in Geometry as well as in Algebra.

Ms. Lisa Colwell is the Deputy Director of Special Education. She testified that Tutoring was not given as a resource in the Sept., 2006 to Sept., 2007 IEP. (Plaintiff's Exch. A-19)

Tutoring was terminated because of the progress reported by the resource teacher, Ms. Hart. (Trans 11-16-06 P. 166)

This witness did not have sufficient knowledge to determine what Ms.Hart, the resource teacher, was doing with the Student.

The Student testified in this matter. Because of the Tutoring in the 7th and 8th grades she stated:

> "Everything started getting easier.
> Everything started to flow together."
> (Trans. 11-16-06 P. 38)

The Students mother worked with her after school.

In the 8th grade she received a 93 in English. The Student explained the mark in the following way:

> " When you've had this for awhile you find ways to get things done. I would stay after school, my Mom would help me and Ms. McJannett would help me" (Trans. 11-16-06 P. 44)

It should be noted that the Student testified that resource for both the 9th and 10th grades was a study class. (Trans. 11-16-06 P.46) There were nine to ten students none of the other students had dyslexia.

The Student was not working one on one with Ms. Hart on grammar or reading comprehension. (Trans. 11-16-06 P. 48) The Student did not receive help from the resource teacher. (Trans. 11-16 06 P. 51) The teacher was trying but it was not effective. The Student could not understand it. (Trans. 11-16-06 P. 51)

The biggest help to the Student over the past four years was Ms. McJennett. (Trans. 11-16-06 P. 68)

> "....I have to give her credit for that because she has enabled me to understand something and make sense of it and relates it to something else and that enables me to talk in class about it and there my Mom helps me read it. ......"
> (Trans. 11-16-06 P. 68)

Both the June, 05 to June, 06 IEP and the Sept. 06 to May, 07 IEP have the same objectives under the writing section.

The Student will:

1) Produce a report.
2) Produce a response to literature.

3) Produce a Narrative account.
4) Produce a persuasive and reflexive essay.

These objectives are supposed to be obtained through resource with Ms. Hart. (Plaintiff's Exh. A 18 & A 19)

The Student testified that none of the above has been done in the resource room with the resource teacher. (Trans. 11-16-06 P. 81).

**DECISION**

**ISSUE:** Should the IEP for the year September, 2006 to May, 2007 include tutoring as a resource?

A free appropriate public education consists of educational instruction specially designed to meet the unique need of the handicapped child, supported by such services as are necessary to permit the child "to benefit" from the instructions. Board of Education of Hendrick Hudson Central School District, Westchester County, et al vs. Rowley 458US176 (1982) P.188

The April, 2004 to April, 2005 IEP had tutoring for two hours one day a week at home as did the IEP for June, 2005 to May, 2006. The grade report (Plaintiff's Exh. 21) shows grades consisting of all As and one B for the year April, 2004 to April, 2005, yet the School District continued with tutoring for two hours one day a week in the year June, 2005 to June, 2006 . The School District now argues that the Student's grades and the continued progress is such that tutoring is no longer needed.

Why did the School District make this decision?

The Deputy Special Education Director said the decision was based on the report of Ms. Hart, resource teacher, and the grades and progress made. The grades and progress is almost the same as the prior year in which tutoring was provided.

As to the resource which was supposed to be provided in Ms. Hart's class, I find that none was being provided. The class was no more than a study class. None of the objectives listed in the 05 to 06 IEP under "Writing" were being used or followed by the resource teacher. This Hearing Officer questioned the Student in this regard and specifically asked the Student if she was instructed to do any of the objectives listed. She said no. (Plaintiff's Exhibit A-26) was a sample of the work done in resource by the Student. I find it had nothing to do with the objectives as found in the IEP.

As to the grades this Student received, Rowley address that issue:

> " The grading and advancement system
> this constitutes an important factor in
> determining educational benefit"
> Rowley 458 U.S. at P. 203

In this case, the grade system of at least that of the English teacher for the 05-06 IEP year, does not reflect whether or not the resource is helping this Student. That teacher as well as others were not concerned with spelling, writing or grammar all of which are affected by this Student's learning disability.

The Student's deficits in these areas are the reason the Student was designated "learning disabled". Unless the Teachers correct the errors made by this Student in those areas how can the grade be an accurate measurement of the Student's achievement or that the Student is receiving a benefit from the resource.

The evidence clearly shows that the School District has not been providing this Student with any resource at all except for the Tutoring which they now want to stop.

This Student is succeeding because she has a strong work ethic, she is productive, thoughtful, creative and proud of her work. (Trans. 11-16-06 P. 148)

I find that the educational benefit this Student is receiving under the IEP is directly related to the tutoring that she is receiving.

Based upon the facts as above stated, the evidence and the law I find:

1) That tutoring shall remain in the IEP for the September, 2006 to May, 2007 IEP.

2) That the School District pay for all costs of providing the Tutoring including any costs incurred by the Parents for Tutoring from the last time the School District paid up to the Present time.

3) That Jane McJannett continue as the Tutor and that the Provider be the Rhode Island Tutorial and Educational Services.

4) That the Tutorial Services be continued through the Summer as an extended School Year Program to prevent regression.

5) That the IEP Team review the goals and objectives as found in the IEP with the resource teacher to insure that resource is being provided according to the objectives and that resource time is not used as a Study Class.

DATE: December 29, 2006

Arthur G. Capaldi

Arthur G. Capaldi
1035 Main Street
Coventry, R.I. 02816
Tel: 821-3537